IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MEMPHIS PUBLISHING     )
COMPANY, publisher of     )
*The Commercial Appeal*    )
            )
and           )
            )
MARC PERRUSQUIA     )
            )
Plaintiffs,         )
            )
    v.       )
            ) Civil Action No. 10-1878 (RMU)
FEDERAL BUREAU OF INVESTIGATION, ) Judge Ricardo Urbina
            )
    Defendant.      )
            )

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)  I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), formerly at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C., and currently relocated to Winchester, Virginia. I have held this position since August 1, 2002. Prior to my joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)  In my official capacity as Section Chief of RIDS, I supervise approximately 276 employees who staff a total of ten (10) FBIHQ units and two field operational service center

units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA; as most recently amended by the OPEN Government Act of 2007 and the OPEN FOIA Act of 2009; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General and FBI policies and procedures; judicial decisions and Presidential and Congressional directives. My responsibilities also include the review of FBI information for classification purposes as mandated by Executive Order 13526[1], and the preparation of declarations in support of Exemption 1 claims asserted under the FOIA[2]. I have been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to Executive Order 13526, §§ 1.3 and 3.1. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's response to the FOIA requests of plaintiff Marc Perrusquia of *The Commercial Appeal* (collectively "plaintiffs"). Both his February 12, 2008 FOIA request to FBIHQ and his September 2, 2008 FOIA request to the FBI's Memphis Field Office sought access to records concerning Ernest C. Withers.

(4)     The FBI submits this declaration in support of a motion for an extension of time until July 15, 2011 to process all potentially responsive records and prepare a <u>Vaughn</u>

---

[1] 75 Fed. Reg. 707 (2010).

[2] 5 U.S.C. § 552(b)(1).

declaration in support of its motion for summary judgment.  Based on the reasons which will be

discussed in greater detail below, this extension of time will: (a) allow the FBI to complete the

review and assertion of applicable FOIA exemptions for cross-reference materials which RIDS

has identified as being potentially responsive to Mr. Perrusquia's FOIA request - approximately

1,536 pages and 12 audio tapes (consisting of approximately 240 total minutes of audio) and (b)

allow the FBI time to prepare a thorough <u>Vaughn</u> declaration in support of the FBI's motion for

summary judgment for documents from the recently identified cross-reference material as well as

the 369 main file pages previously processed for Mr. Perrusquia.

### Search For Responsive Records

(5)     In response to Mr. Perrusquia's February 12, 2008 request to FBIHQ, the FBI

searched the Central Records System ("CRS")[3] for records pertaining to Ernest C. Withers in

order to locate any main investigatory files responsive to the request.  Following this initial

search for main file records at FBIHQ, RIDS did not identify any records responsive to the

request.  In response to Mr. Perrusquia's September 2, 2008 request, the FBI initially searched

the CRS for Memphis Field Office records pertaining to Ernest C. Withers in order to locate any

main investigatory files responsive to the request.  This search identified main files, in which

Ernest C. Withers is indexed as a main subject, pertaining to an FBI investigation related to the

corruption of state and local public officials.  From these files, RIDS reviewed approximately

119 pages and released 115 pages to Mr. Perrusquia on March 12, 2009.  Plaintiffs subsequently

---

[3]     The Central Records System ("CRS") used by the FBI enables it to maintain all pertinent
information that it has acquired in the course of fulfilling mandated law enforcement
responsibilities.  The records maintained in this CRS consist of administrative, applicant,
criminal, personnel, and other files compiled for law enforcement purposes.  This system
consists of a numerical sequence of files broken down according to subject matter.  The subject
matter of a file may relate to an individual, organization, company, publication, activity, or
foreign intelligence matter.  Certain records in this system are maintained at FBIHQ. Records
which are pertinent to specific field offices are maintained in those field offices.

appealed this release to the Department of Justice, Office of Information Policy ("OIP"), and OIP

remanded the case to the FBI for further searches.  The FBI subsequently conducted an

additional search of FBIHQ and all FBI field offices for main file investigatory records

pertaining to Ernest C. Withers.  As a result of this search, the FBI located two additional main

files in which Mr. Withers was the main subject of the files.  From these two files the FBI

reviewed approximately 369 pages and released 254 pages to Mr. Perrusquia on March 8, 2010.

(6)     A later search of the CRS conducted by RIDS revealed a number of cross-

references potentially responsive to Mr. Perrusquia's requests.  A "reference" entry, sometimes

called a "cross-reference," is generally only a mere mention or reference to an individual,

organization, or other subject matter, contained in a document located in a "main" file whose

main subject is different than the cross-reference.  The FBI identified a total of approximately

1,536 pages and 12 audio tape recordings (consisting of approximately 240 total minutes of

audio) from FBIHQ and the Memphis Field Office in which Ernest Withers is indexed as a cross-

reference.

### Processing Plaintiffs' FOIA Request by RIDS

(7)     The processing of potentially responsive records involves the following steps:  (a)

conducting a search in CRS to identify potentially responsive records, and gathering records

from the Offices, Divisions and/or Field Offices most likely to have responsive records; (b)

reviewing and evaluating the retrieved records for potential responsiveness; (c) scanning the

records into the FOIPA Document Processing System ("FDPS") for further electronic review and

processing; (d) conducting review to identify any classified information in the material and

applying appropriate exemptions and classification markings; (e) conducting review for any

additional applicable FOIA exemptions and applying them; (f) referring documents to other

government agencies for either consultation or direct response, as necessary; and (g) coordinating pre-release review with the originating Office, Division and/or Field Office.

(8)   As of this date, RIDS believes it has identified and gathered all cross-reference documents that are potentially responsive to Mr. Perrusquia's requests from both FBIHQ and the Memphis Field Office; reviewed and scoped the potentially responsive material, and scanned it into FDPS. Based on the current page count of 1,536 pages and 240 minutes of audio, the FBI estimates it will require approximately 60 days to complete the review and processing of the potentially responsive audio and cross-reference material. RIDS's general processing average is 500 pages per FOIA request, every 30 days. As a result, the 60-day review and processing time frame requested represents an aggressive, accelerated processing rate by RIDS.

(9)   In a further effort to make the processing and the preparation of the Vaughn declaration proceed as efficiently as possible, RIDS is "coding" the records as it processes them. "Coding" involves placing coded categories of the FOIA exemptions next to the information withheld, which will provide details as to the nature of the information withheld. Each withholding of information will be accompanied by a code that corresponds to the FOIA exemptions and the specific subcategory it relates to. For example, if "(b)(7)(C)-1" appears on the page, the "(b)(7)(C)" designation refers to "Exemption (b)(7)(C)" of the FOIA concerning "Unwarranted Invasion of Personal Privacy." The subcategory "1" narrows the main category into the more specific subcategory, "Names and/or Identifying Information of the FBI Special Agents ("SAs") and Support Personnel." The coded subcategories are not standardized and will depend on the substance of the responsive records.

(10)   These codes will be explained in greater detail in the FBI's Vaughn declaration. In addition to processing and coding the cross-reference material, the 369 pages previously

processed for Mr. Perrusquia will need to be coded for inclusion in the <u>Vaughn</u> declaration. However, because the codes are applied in a non-formulaic fashion, and are custom-tailored to the needs of each individual declaration, RIDS will be unable to commence this process until after the cross-reference materials have been processed and coded.

(11)    Although RIDS intends to work diligently to complete its review of the records in this case and prepare the <u>Vaughn</u> declaration needed to support the FBI's motion for summary judgment, RIDS's resources are significantly strained by substantial administrative and litigation burdens. The FBI receives approximately 16,000 new FOIA/Privacy Act requests per year. For fiscal year 2010, the FBI released 2.2 million pages of material. Currently, there are 1.97 million pages of records awaiting review at the administrative level by RIDS' staff. Currently, there are 27 pending FOIA requests, where the FBI has identified more than 8,000 responsive pages for each request and which are being processed and released on a rolling basis. In addition to this substantial administrative workload, RIDS has a significant FOIA litigation workload, including several urgent and competing federal district court litigation deadlines. At the present time, the FBI is involved in approximately 115 pending lawsuits in various federal courts throughout the United States. Several of these pending litigations are document-intensive and have required the devotion of significant resources in order to comply with agreed-upon or court ordered litigation deadlines. The FBI is currently working under six agreed-upon or court-ordered production schedules. These cases include <u>Secure Communities/National Day Laborer Organizing Network, et al. v. ICE, et al.</u>, Civ. A. No. 10-3488 (S.D.N.Y.); <u>Judicial Watch v. FBI</u>, Civ. A. No. 10-593 (D.D.C.); <u>Judicial Watch v. FBI</u>, Civ. A. No. 10-1568 (D.D.C.); <u>Boehme v. FBI</u>, Civ. A. No. 09-2173 (D.D.C.); <u>Electronic Frontier Found. v. DOJ, et al.</u>, No. 10-cv-04892 (N.D. Cal.); and <u>Kisseloff v. Federal Bureau of Investigation, et al.</u>, Civ. A. No. 08-391 (D.D.C.).

(12)     Once RIDS has completed its review and processing of all responsive records and has released non-exempt material to plaintiffs, the FBI will be in a position to prepare a thorough Vaughn declaration.  The amount of time required to prepare the Vaughn declaration will depend upon the number of pages which plaintiffs will eventually want to challenge in this case and the nature of the exemptions asserted on each page.  If the FBI has to Vaughn each page of the possible 1,905 page release in addition to the 12 audio tapes, in a effort to make a good faith effort to respond to plaintiffs' summary judgment motion as soon as is practicable, the FBI estimates that it will need at least 90 days to prepare a Vaughn declaration.  However, if plaintiffs were to agree to limit the briefing to a 10 percent sample of the documents in this case (approximately 190 pages and one audio tape), the FBI will be able to complete its Vaughn declaration in 30 days from the date the sample selection is chosen.  In order to select the 10 percent sample, the FBI is willing to accept pages selected by plaintiffs, or in the absence of document selections made by plaintiffs, select its own random sample upon which its Vaughn declaration will be based.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true

and correct.

Executed this ___ day of February, 2011.

DAVID M. HARDY
Section Chief
Records/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia