UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MEMPHIS PUBLISHING COMPANY, publisher of *The Commercial Appeal* and MARC PERRUSQUIA<br><br>   495 Union Avenue,<br>   Memphis, TN 38103<br><br>   Plaintiffs,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION<br><br>   935 Pennsylvania Avenue, N.W.<br>   Washington, D.C. 20535<br><br>   Defendant. | Case No.:  1:10-cv-01878-ABJ<br>Judge Amy Berman Jackson<br><br><br><br><br>ORAL ARGUMENT REQUESTED |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF A *VAUGHN* INDEX FOR ERNEST WITHERS' CONFIDENTIAL INFORMANT FILE, AND MOTION FOR *IN CAMERA* REVIEW OF THE FILE**

**INTRODUCTION:**

Plaintiffs ask the Court to order the Federal Bureau of Investigation, which already has disclosed that noted civil rights photographer Ernest Withers was a confidential informant, to provide the basic information necessary for an adjudication of the public's right to view Withers' file.  Rather than assist the Court in reaching that issue on summary judgment, the FBI has now decided, for the first time since denying the Plaintiffs' 2008 FOIA request for this deceased

person's file, to invoke a law enacted to protect living drug informants from reprisals.  *See* Dkt. 14-1 at 35-38.  To prevent the further prolonging of this litigation, and to help the Court decide the ultimate issues, the FBI should be required to file a *Vaughn* index of Withers' confidential informant files and to submit the complete files for the Court's *in camera* review.

**BACKGROUND:**

In this Freedom of Information Act lawsuit, journalist Marc Perrusquia and his newspaper *The Commercial Appeal* seek disclosure of FBI records concerning Withers, a Memphis photographer who was granted unique access to the leadership of the civil rights movement in the 1960s.  Plaintiffs' Statement of Undisputed Facts, ¶ 28.[1]  Plaintiffs' FOIA request was made after Withers death in 2007.  *Id.*

Based on documents obtained in response to their FOIA request, the Plaintiffs and others have reported on the questions historians have raised about the propriety and methods, including the inducement of informants like Withers, of the government's surveillance of civil rights leadership.  *Id.* at ¶ 21-23.  In the wake of the September 11, 2001 attacks on the United States, these questions have continuing relevance to the current debates about the scope and propriety of the government's domestic surveillance efforts.

In its official response to Plaintiffs' FOIA request, the FBI released records that clearly identify Withers as a confidential informant, providing information on the civil rights movement and its leaders.  In fact, the FBI in responding to the Plaintiffs' Motion for Summary Judgment filed a document that further makes this disclosure plain.

The D.C. Circuit recently has questioned the FBI's illicit-intelligence gathering operations and whether information obtained through such operations can be lawfully withheld

---

[1] Plaintiffs' Statement of Undisputed Facts was submitted in support of their Motion for Summary Judgment, Dkt. 9.

under FOIA. *See Roth v. Department of Justice*, ___ F.3d. __, 2011 WL 2535796, *8 (D.C.Cir. 2011). Despite this, the FBI in its summary judgment briefing, Dkt. 14-1 at 35-38, relies on 5 U.S.C. § 552 (c)(2) to insist that it need not even search for and index that file. That statute, according to both Congress and the FBI itself, applies only in very limited circumstances not presented here. Further, even if the statute had a bearing on Withers' informant file, it is inapplicable because his status as a confidential informant has been "officially confirmed."

**ARGUMENT:**

**I.    A *VAUGHN* INDEX PLAYS AN ESSENTIAL ROLE IN FOIA LITIGATION IN PERMITTING THE COURT AND PARTIES TO TEST THE VALIDITY OF A CLAIMED EXEMPTION.**

Standard procedure in FOIA litigation compels an agency to produce an index prior to litigation challenging the appropriateness of the government's redactions and withholdings. *See Vaughn v. Rosen*, 484 F.2d 820, 827-28 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). This index, which must explain on a document-by-document basis how each document or each segment of redacted text falls under a claimed FOIA exemption, gives the plaintiff an opportunity to "focus and controvert the real issues, and hence make[s] for more effective court review." *Ely v. FBI*, 781 F.2d 1487, 1493 (11th Cir. 1986). The index further provides the court with the factual basis necessary to determine whether the claimed exemptions apply as a matter of law, rather than giving blanket deference to the government. *Id.* at 1494. Without a *Vaughn* index, plaintiffs must blindly litigate--and the courts would blindly adjudicate--entitlement to the records, without knowing precisely what records are being withheld or why.

Therefore, before assessing the agency's decisions to withhold or redact documents, courts routinely order agencies to prepare a *Vaughn* index in FOIA cases. *See, e.g. Electronic Privacy Information Center v. Department of Homeland Security*, 384 F.Supp.2d 100,

3

110 (D.D.C.2005) (requiring agency to submit a *Vaughn* index with a more detailed description of documents withheld before assessing the appropriateness of the withholding); *National Sec. Archive v. Office of Independent Counsel*, No. Civ.A. 89-2308, 1992 WL 1352663, *4 (D.D.C. 1992) (ordering the production of a more detailed *Vaughn* index justifying the agency's non-disclosure of redacted information).

Similarly, in light of FOIA's disclosure objectives, a district court may also review documents *in camera* before addressing the appropriateness of an agency's withholdings. 5 U.S.C. § 552(a)(4)(B).  Although an agency's decision may often be reviewed on the basis of a *Vaughn* index or affidavits submitted by the government agency, where the factual support submitted by an agency fails to provide adequate factual support to justify the decision to withhold certain documents, an *in camera* review helps the court "undertake [a] probing and exacting review" of the agency's withholdings.  *Ely*, 781 F.2d at 1492. *See, e.g., Citizens For Responsibility and Ethics in Washington v. National Archives and Records Admin.*, 583 F.Supp.2d 146, 161 (D.D.C. 2008) (requiring an *in camera* review of documents where it was not clear from the *Vaughn* index whether a FOIA exemption applied).  *See also Ray v. Turner,* 587 F.2d 1187, 1195 (D.C.Cir.1978) (stating that district judge has discretion to conduct *in camera* inspection when something leads the judge to believe "that *[i]n camera* inspection is needed in order to make a responsible *de novo* determination on the claims of exemption").

Because the FBI has failed to produce a full and complete *Vaughn* index justifying its withholding of documents requested by Plaintiffs, an *in camera* review of the documents is warranted and would provide this Court with an adequate basis to determine the applicability of the claimed exemptions.

II.     **5 U.S.C. § 552 (c)(2) PROTECTS LIVING CONFIDENTIAL INFORMANTS FROM REPRISALS IN ONGOING ORGANIZED CRIME INVESTIGATIONS, NOT A DECEASED INFORMANT FROM A CIVIL RIGHTS INVESTIGATION CLOSED DECADES AGO.**

The FBI, to avoid providing the Court and counsel with the *Vaughn* index needed to test the claim that Withers' files should remain sealed, improperly relies on 5 U.S.C. § 552 (c)(2). Yet that statute was enacted as part of the Anti-Drug Abuse Act of 1986, Public Law No. 99-570.  It operates as an extremely narrow FOIA exclusion and "expressly authorize[s] federal law enforcement agencies, for certain especially sensitive records under certain specified circumstances, to 'treat the records as not subject to the requirements of FOIA." *Tanks v. Huff*, No. CIV. A. 95-568 (GK), 1996 WL 292531 (D.D.C. 1996) (citing *The Attorney General's Memorandum on the 1986 Amendments to the Freedom of Information Act* (Dec. 1987)).   Stated another way, the exclusion allows an agency to deny entirely the existence of a document and foreclose any meaningful challenge to an agency's determination.

As the statute facilitates administrative secrecy in direct contrast to FOIA's objectives of public access and disclosure, it should be narrowly construed. *See Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 16 (2001). The legislative history of 5 U.S.C. § 552 (c)(2), the Department of Justice's own interpretation of the exclusion, and the limited case law interpreting it all clearly demonstrate why the statute simply does not apply here.

    A.     **Congress Intended 5 U.S.C. § 552 (c)(2) To Shield Only Records Pertaining To Individuals Providing Information About Drug Gangs And Other Ongoing Criminal Enterprises.**

The congressional record demonstrates that Congress intended 5 U.S.C. § 552 (c)(2) to shield records from disclosure under certain very limited circumstances in which a target of an organized crime investigation used FOIA to identify informants within their organizations.   In introducing the proposed statute, one of the amendment's sponsors, Senator Orrin Hatch,

explained that, "This section will directly improve drug enforcement." 132 Cong. Rec. S13965-02 (statement of Sen. Orrin Hatch). The Senate sponsor further explained why "sophisticated" use of FOIA by "organized crime" necessitated the measure:

> With regard to organized crime, there is much evidence of the existence of sophisticated networks of FOIA requesters. Under the current FOIA there is a real danger which accompanies FOIA requests by organized criminal groups who have both the incentive and the resources to use the act systematically-to gather, analyze, and piece together segregated bits of information obtained from agency files. These sophisticated criminals can use the FOIA to determine whether an investigation is being conducted on him or his organization, whether there is an informant in his organization, and even who that informant might be. The release of records containing dates of documents, locations reporting investigations, the amount of material, and even the absence of information are all meaningful when compiled in the systematic manner employed by organized crime.

*Id.*

Likewise, in supporting the measure, then-Director of the FBI William H. Webster wrote to Congress that this FOIA exclusion was an essential tool needed to help law enforcement fight the war on drugs.

> As I have testified before the Senate on a number of occasions, the provisions contained in the pending drug bill are long overdue and likely to make a substantial contribution to the success of our national battle against harmful drugs and the organized crime elements which distribute them. The Senate has unanimously approved these exact provisions in the previous Congress and I strongly encourage it to do so again.

132 Cong. Rec. S13965-02 (statement of Sen. Orrin Hatch submitting Director's letter into the congressional record)**.** Indeed, contrary to the FBI's assertions, the legislative history demonstrates that Congress intended the exclusion to be very limited in scope and apply only to files on informants related to ongoing organized crime activity. *See* S.Rep. 98-221, 98th Cong. 1st Session)(noting that the amendment addressed concerns raised by the FBI that informants

could be compromised if pieces of information from FOIA responses were compiled by those with personal knowledge of a criminal enterprise).  *See also* 132 Cong. Rec. S13965-02 (statement of Sen. Patrick Leahy) ("The language of our amendment addresses the problem which was the concern of the original proposal, the use of FOIA by sophisticated criminal enterprises to learn about ongoing criminal investigations. But, it is narrower and more acceptable to legitimate users of FOIA, especially the news media.");  132 Cong. Rec. S14270-01 (statement of Sen. Dan Quayle) ("The intent of this provision was to prevent targets of organized crime investigations from using the disclosure provisions of FOIA to find out if they were under investigation and to protect the identity of informants. While I wholeheartedly agreed with this goal, there was concern that the original language might virtually terminate public knowledge of government activities relating to organized crime.")

As these statements make clear, the FBI's argument about the breadth of the statutory exclusion is completely refuted by the congressional history.  Ernest Withers was an informant in an investigation of civil rights protestors that the FBI launched as an outgrowth of anti-Communist investigations of the 1950s.  *See* Plaintiffs' Statement of Undisputed Facts, ¶ 2, 9, 10. He is not a living informant reporting on ongoing criminal enterprises, the category of informant the statute was enacted to protect.  Since the exclusion does not apply here, the FBI is required by conventional FOIA law to provide a *Vaughn* index for all responsive records that were withheld from Plaintiffs, including Withers' confidential informant file.

**B.     The Department Of Justice's Internal Guidance Narrowly Construes The Scope of 5 U.S.C. § 552 (c)(2).**

The Department of Justice's own guidance analyzing the 1986 Amendments to the Freedom of Information Act conforms to the narrow intent Senators expressed in passing 5 U.S.C. § 552 (c)(2).  Then-Attorney General Edwin Meese explained that the statute

7

"contemplates the situation in which a sophisticated requester could try to ferret out an informant in his organization." *The Attorney General's Memorandum on the 1986 Amendments to the Freedom of Information Act* (Dec. 1987) at 16, available at http://www.justice.gov/oip/86agmemo.htm. Specifically, the Department of Justice describes the unusual situation that 5 U.S.C. § 552 (c)(2) is principally intended to address:

> One scenario in which the exclusion is likely to be employed is one in which the ringleaders of a criminal enterprise suspect that they have been infiltrated by a source and attempt to use the FOIA to identify that person within their criminal organization by submitting targeted FOIA requests for the records of these suspected sources.

*Department of Justice Guide to the Freedom of Information Act* at 676 (2009); *see also The Attorney General's Memorandum on the 1986 Amendments to the Freedom of Information Act* (Dec. 1987) at 16; *Tanks v. Huff*, 1996 WL 292531, at * 6 ("[This statute] is reserved for circumstances in which a confidential source is compelled by the criminal organization with which he is associated to surrender his privacy interests, usually either by providing a privacy waiver to the organization or to make the request directly on behalf of the organization.") The Department has acknowledged that in all other circumstances, FOIA provides the appropriate context for the adjudication of the right to access a confidential informant's file: "In the ordinary situation, Exemption 7(D) should adequately allow a law enforcement agency to withhold all items of information necessary to prevent the identification of its confidential sources." Department of Justice Guide to the Freedom of Information Act, at 676.

As with the legislative history, the Department of Justice's own interpretation reflects that 5 U.S.C. § 552 (c)(2) does not apply to the circumstances presented here. No ongoing criminal enterprise, or even a living informant, warrants invocation of the statute. Instead, this lawsuit

presents the "ordinary situation" in which litigation under 5 U.S.C. § 552 (b)(7)(D) will permit the Court to adequately weigh the issues involving Withers' informant file.

### C. Courts In This District Have Only Applied 5 U.S.C. § 552 (c)(2) Under The Limited Circumstances Contemplated By Congress.

Consistent with the legislative history and the Department of Justice Guidance, instead of applying 5 U.S.C. § 552 (c)(2), courts in this District consistently analyze the propriety of an agency's withholdings and redactions, even as to confidential informant material, under traditional FOIA exemptions. For example, in *North v. U.S. Dept. of Justice*, 658 F.Supp.2d 163, 171 (D.D.C.2009), the court declined to consider whether the statute applied to confidential informant information, and instead analyzed whether documents were properly withheld under Exemption 7. *See also Clay v. U.S. Dept. of Justice*, 680 F.Supp.2d 239, 248 (D.D.C. 2010) (referring to 5 U.S.C. § 552 (c)(2) but noting that the government may not rely on the statute has been officially confirmed, and instead analyzing the withholding under FOIA Exemption 7); *Boyd v. Criminal Div. of U.S. Dept. of Justice*, 475 F.3d 381, 388-89 (D.C. Cir. 2007) (noting, but not adjudicating, claim of exclusion under 5 U.S.C. § 552 (c)(2), instead analyzing withholding under FOIA Exemption 7); *Tanks v. Huff*, 1996 WL 293531 at *5 (D.D.C.1996) (considering arguments regarding the applicability of 5 U.S.C. § 552 (c)(2), but analyzing the withholdings under Exemption 7).

Likewise, in each of the cases cited by the FBI in its summary judgment briefing here, the courts applied 5 U.S.C. § 552 (c)(2) to the limited factual situations contemplated by Congress and explained in the Department of Justice's own interpretation of the statute. *Benavides v. Drug Enforcement Admin.*, 968 F.2d 1243, 1248 (D.C.Cir. 1992)(federal inmate brought FOIA suit concerning alleged government informants at his drug trial); *Barbosa v. Drug Enforcement*

*Administration*, 541 F.Supp. 2d 108 (D.D.C. 2008) (plaintiff convicted of drug charges brought FOIA suit concerning alleged government informant).

In fact, in light of the narrow scope of 5 U.S.C. § 552 (c)(2), courts routinely determine the propriety of an agency's withholdings and redactions pertaining to confidential informants based entirely on Exemption 7(D). *See, e.g., Boyd v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, Civil Action No.: 05-1096, 2006 WL 2844912 (D.D.C. September 29, 2006) (analyzing agency's withholding under Exemption 7(D)); *Campbell v. Department of Justice*, 231 F.Supp. 2d 1(D.D.C. 2002) (analyzing agency's withholding under Exemption 7(D)); *Burke v. Department of Justice*, No. Civ. A. 96-1739, 1999 WL 1032814 (D.D.C. 1999) (analyzing agency's withholding under Exemption 7(D)).

Given the legislative history, the Department of Justice Guidance, and the interpretations of the courts in this District, 5 U.S.C. § 552 (c)(2), does not apply to Plaintiffs' FOIA request. Therefore, this Court should order that the FBI produce a full and complete *Vaughn* index and to produce the Withers' information file for *in camera* inspection.

### III.   REGARDLESS, WITHERS' STATUS AS AN INFORMANT HAS BEEN "OFFICIALLY CONFIRMED" AND THE FILE IS THEREFORE NOT SHIELDED BY 5 U.S.C. § 552 (C)(2).

#### A.   The FBI's Response To Plaintiffs' FOIA Request Officially Confirms Withers' Status As An Informant.

By its plain terms, 5 U.S.C. § 552 (c)(2) does not apply when an "informant's status as an informant has been officially confirmed." Courts in this District have consistently recognized that where an informant's status is disclosed by the government, the statute, by its express terms, does not apply. *See Boyd v. Criminal Div. of U.S. Dept. of Justice*, 475 F.3d 381, 388-389 (D.C. Cir. 2007) 5 U.S.C. § 552 (c)(2) inapplicable where informant's status was officially confirmed in a letter from a prosecutor providing defense with exculpatory information); *Tanks v. Huff*,

10

1996 WL 293531,*5 (D.D.C.1996) (5 U.S.C. § 552 (c)(2) inapplicable where informants' status was officially confirmed through their trial testimony).

The FBI has confirmed Withers' informant status through its responses to Plaintiffs' FOIA request and through the Declaration of Dennis Argall in support of the FBI's Motion for Summary Judgment. Despite their argument to the contrary, this is an official FBI confirmation, not an unofficial leak. *See Valfells v. Central Intelligence Agency*, 717 F.Supp.2d 110 (D.D.C. 2010) (FOIA responses are official agency actions).

Specifically, on March 12, 2009, the FBI responded to Plaintiffs' FOIA request for documents pertaining to Withers. The response was on official FBI letterhead and was signed by David M. Hardy, Section Chief, Record/Information Dissemination Section, Records Management Division. A copy of the FBI's response, which was contained in the Perrusquia Declaration in support of Plaintiffs' Motion for Summary Judgment, Dkt. 9-3, is attached as Exhibit A. The records released by the FBI include a redacted document that reads:

> **Ernest Columbus Withers was formerly designated as ME 338-R, [redacted text] captioned "Ernest Columbus Withers; CI."**

A copy of this document, which was contained in the Perrusquia Declaration, Dkt. 9-3, is attached as Exhibit B.

On March 8, 2010, the FBI further responded to Plaintiffs' FOIA request. Again, the response was on official FBI letterhead and was signed by David Hardy. A copy of this document, which was contained in the Perrusquia Declaration, Dkt. 9-3, is attached as Exhibit C. The records released by the FBI include a document with a handwritten notation "Conf. Infor."

On a 1978 search slip for documents concerning Mr. Withers. A copy of this document, which was contained in the Perrusquia Declaration, Dkt. 9-3, is attached as Exhibit D.[2]

The FBI further confirmed Withers' status as a confidential informant in two documents attached to the Declaration of Dennis Argall, Assistant Section Chief of the Record/Information Dissemination Section, Records Management Division, submitted with Defendant's Motion for Summary Judgment, Dkt. 14. The document that reads, "Ernest Columbus Withers was formerly designated as ME 338-R, [redacted text] captioned 'Ernest Columbus Withers; CI'", is now assigned the Bates label FBI-Withers-10 and includes the FBI's notation of the justification for redacting information. A copy of this document, contained in Exhibit X to the Argall Declaration, Dkt. 14-5, is attached as Exhibit E. In this version, the redacted text is justified with reference to the code category "b(7)(D)-3"--the category used to withhold confidential source file numbers. In making this notation, and providing it to Plaintiffs and the Court, the FBI has again officially confirmed that Withers was a confidential informant. Similarly, the document referring to Withers as a "conf. infor.," now assigned the Bates label FBI-Withers-464, was also released again in the Argall Declaration. A copy of this document, contained in Exhibit X to the Argall Declaration, Dkt. 14-6, is attached as Exhibit F.

These disclosures were all made by experienced FBI officials as part of the agency's response to an official FOIA and a public lawsuit. The disclosures constitute official confirmation of Withers' status within the meaning of 5 U.S.C. § 552 (c)(2).

---

[2] In addition to the FBI's official confirmations that Withers' was a confidential informant, Plaintiff Marc Perrusquia recently interviewed Betty Lawrence, the daughter of Withers' principal contact at the FBI during the 1960s and '70s, Agent William Lawrence. Betty Lawrence provided Perrusquia with a copy of Agent Lawrence's handwritten notes, recorded contemporaneously with conversations the agent had with Withers, and which further confirm Withers' status as a confidential informant. *See* Perrusquia Declaration, Dkt. 9-6; Lawrence Declaration, Dkt. 9-12.

**B.      The FBI's Disclosure Of Withers' Status As An Informant Does Not Require Logical Deductions And The Public Domain Doctrine Does Not Apply to 5 U.S.C. § 552(c)(2).**

Notwithstanding these official responses, the FBI makes three arguments that it has not "officially confirmed" Withers' status as an informant. Each is unavailing.

First, the FBI relies on inapposite cases for the proposition that a "logical deduction" is not an official acknowledgement. The plaintiffs in *Valfells v. Central Intelligence Agency*, 717 F.Supp. 2d 110 (D.D.C. 2010) and *Whalen v. U.S. Marine Corps.*, 407 F.Supp. 2d 54 (D.D.C. 2005) used information from various sources to draw deductions about what information had been withheld. Here, no logical deduction or specialized knowledge is required. In particular, the document released by the FBI is clear on its face and stands alone to confirm Withers' status as an informant: "Ernest Columbus Withers was formerly designated as ME 338-R, [redacted text] captioned 'Ernest Columbus Withers; CI.'"

Second, the FBI primarily relies on cases that do not involve the release of information by the defendant agency in response to a FOIA request. In *Frugone v. CIA*, 169 F.3d 772 (D.C.Cir. 1999), the court addressed whether a disclosure by the Office of Personnel Management could be considered an "official" disclosure of the CIA. In *American Civil Liberties Union v. Department of Defense*, 628 F.3d 612 (D.C.Cir. 2011), the court addressed whether a document that was leaked to a journalist could constitute a disclosure affecting the applicability of the FOIA exemptions. In *Valfells v. Central Intelligence Agency*, 717 F.Supp.2d 110 (D.D.C. 2010), the court addressed whether a FOIA response from the FBI could be considered an official CIA action. And in *Whalen v. U.S. Marine Corps.*, 407 F.Supp. 2d 54 (D.D.C. 2005), the court addressed whether information contained in a book by a former CIA officer could be considered an official acknowledgment by the CIA.

Third, none of the remaining cases cited by the FBI even addresses the "official confirmation" language under § 552(c)(2); instead these decisions analyze whether the public domain doctrine applies under traditional FOIA exemptions. *See, e.g. Adamowicz v. Internal Revenue Service*, 402 Fed. Appx. 648 (2d Cir. 2010)(Exemption 7(D)); *Ford v. West*, 149 F.3d 1190 (10th Cir. 1998) (Exemptions 6 and 7(E)); *Billington v. Department of Justice*, 69 F.Supp. 2d 128 (D.D.C. 1999) (Exemption 7(C)), rev'd in part on other grounds, 233 F.3d 581 (D.C.Cir. 2000); *Kay v. Fed. Communications Commission*, 867 F.Supp. 11 (D.D.C. 1994)(Exemption 7(A)); *Garside v. Webster*, 733 F. Supp. 1142 (S.D.Ohio 1989) (Exemptions 3, 6, and 7). Whether a document is in the public domain is not the same as whether there has been an "official confirmation" of an informant's status. Therefore, these cases are immaterial to what constitutes an "official confirmation" under 5 U.S.C. § 552 (c)(2).

The FBI's allegation that there has been no "official confirmation" of Withers' status, despite these multiple disclosures, does not make it so. In light of the official release of records confirming Withers' status as an informant, 5 U.S.C. § 552 (c)(2) simply does not apply to this litigation.

**CONCLUSION:**

For the foregoing reasons, Plaintiffs respectfully request that this Court order the FBI to produce a full and complete *Vaughn* index to accompany its Motion for Summary Judgment and

to produce the entire files for the Court's inspection *in camera*.

Dated:   July 8, 2011                                      Respectfully Submitted,


**HOLLAND & KNIGHT LLP**

Charles D. Tobin #455593
Christine N. Walz #996643
2099 Pennsylvania Ave., N.W., Suite 100
Washington, D.C. 20006
Telephone:  (202) 955-3000
Facsimile: (202) 955-5564

*Counsel for Plaintiffs*
*Memphis Publishing Company*
*and Marc Perrusquia*


By:   /s/ Charles D. Tobin
           Charles D. Tobin